FILED

2017 Aug-15  AM 09:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ACADIA INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| SOUTHERNPOINTE GROUP, INC.; ROBERT DONLON; BEVERLY DONLON; LUTHER S. PATE, IV; ENCORE TUSCALOOSA, LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

### Statement of Parties and Jurisdiction

1.     Acadia Insurance Company (hereinafter "Acadia") is a corporation incorporated and organized under the laws of the State of New Hampshire and has its principal place of business in the State of Maine.

2.     Upon information and belief, Defendants Robert Donlon and Beverly Donlon are adult resident citizens of the State of Alabama (sometimes referred to collectively as "the Donlons").

3.     Defendant SouthernPointe Group, Inc. ("SouthernPointe") is a corporation incorporated under the laws of the State of Alabama with its principle place of business in the State of Alabama. Defendants SouthernPointe Group, Inc.,

Robert Donlon, and Beverly Donlon are sometimes referred to as the "SouthernPointe Defendants."

4.      Upon information and belief, Defendant Luther S. Pate, IV is an adult resident citizen of the State of Alabama.

5.      Defendant Encore Tuscaloosa, LLC ("Encore, LLC") is a limited liability company formed under the laws of the State of Alabama with its principle place of business in the State of Alabama. Luther S. Pate, IV ("Pate") and Encore, LLC are sometimes referred to as "the underlying plaintiffs."

6.      This is a declaratory judgment action, which seeks to adjudicate the rights of the parties under a Commercial Liability Policy, which includes a Commercial General Liability Coverage Part[1], issued by Acadia to Wintzell's, Inc. One of the defendants, SouthernPointe Group, Inc., is listed as an insured under the Acadia policy for the 03/10/14 to 03/10/15 policy period. It is Acadia's position that Robert Donlon and Beverly Donlon are insureds under the policy only as it relates to their duties/actions as officers of SounternPointe Group, Inc.  A certified copy of the policy is attached as **Exhibit A**.

7.      On or about February 1, 2016, Pate and Encore, LLC filed suit in the Circuit Court of Jefferson County, Alabama (CV-2016-900373 ("the underlying suit")).  A filed copy of the underlying lawsuit is attached as **Exhibit B**.

---

[1]      For the purpose of this action, the CGL coverage part is hereinafter referred to as "the policy."

8.      In the underlying suit, Pate and Encore, LLC name as defendants, SouthernPointe Group, Inc., Robert Donlon, and Beverly Donlon, among others. Upon information and belief, the Donlons own and operate the Wintzell's Oyster House restaurants in the State of Alabama.

9.      The underlying plaintiffs allege that SouthernPointe Group, Inc. (along with Robert Donlon and Beverly Donlon as corporate officers of SouthernPointe) entered into a contractual agreement with Pate and/or Encore, LLC to "develop franchises" for two (2) new Wintzell's Oyster House restaurants. The new locations were to be built in the Jefferson County, Alabama area. The SouthernPointe defendants represented they had the skill to develop and open the restaurants; that opening each new restaurant would cost approximately $150,000 and "that the money being spent was for the good of the specific business venture between the [underlying] Plaintiffs and one or more of the [underlying] Defendants." **Exhibit B**, Underlying Complaint, ¶ 11, pp. 2-3.

10.     The SouthernPointe Defendants, among others, however, never provided the underlying plaintiffs with "the ownership or membership interest for which [the underlying plaintiffs] paid." **Exhibit B**, Underlying Complaint, ¶ 13, p. 3.

11.     The SouthernPointe Defendants, among others, squandered and/or misappropriated the capital the underlying plaintiffs contributed for the

development of the sites/buildings, as well as extraneous costs and expenses and "fraudulently transferred [the underlying plaintiffs'] funds to organizations that did little or no work to benefit" the parties' joint business venture. **Exhibit B**, Underlying Complaint, ¶ 15, p. 3.

12.     In July 2015, the underlying plaintiffs refused to make an additional required financial investment. **Exhibit B**, Underlying Complaint, ¶ 17, p. 4.

13.     The underlying plaintiffs seek a "constructive trust" in order "to prevent the [underlying defendants] from disposing of or otherwise concealing the monies made the basis of this action." **Exhibit B**, Underlying Complaint, ¶ 20(k.), p. 6.

14.     The underlying plaintiffs allege that, while one (or more) of the underlying defendants has refunded a fraction of the investment money, Pate and/or Encore, LLC is/are still owed a refund of the remaining six hundred thousand dollars ($600,000) the underlying plaintiffs contributed toward the business enterprise. **Exhibit B**, Underlying Complaint, ¶18, p. 4.

15.     Jurisdiction is based upon diversity of citizenship and the amount in controversy pursuant to 28 USC §1332.

16.     This action is brought under the provisions of the *Federal Declaratory Judgment Act*, 28 USC §2201.

17.     As stated herein, Acadia issued to Wintzell's, Inc. an insurance policy that includes Commercial General Liability coverage. SouthernPointe Group, Inc. is listed as an insured under the policy identified as Policy No. CPA 4267413-40, with effective dates of 03/10/14 to 03/10/15. The policy carries a general aggregate limit of two million dollars ($2,000,000).

### Facts and Allegations

18.     Acadia's policy contains the following relevant terms, conditions and exclusions:

**COMMERCIAL GENERAL LIABILITY**
**CG 00 01 12 07**

**COMMERCIAL LIABILITY COVERAGE FORM**


**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

**…**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the "coverage territory",

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1**. Of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

...

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**   Receives a written or verbal demand or claim for   damages because of the "bodily injury" or "property      damage"; or

**(3)**   Becomes aware by any other means that "bodily      injury" or "property damage" has occurred or has      begun to occur.

...

2.   **Exclusions**

This insurance does not apply to:

a.   **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.   **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

...

j.   **Damage to Property**

"Property damage" to:
...

**(4)**   Personal property in the care, custody or control of the insured;

...

    **m.**    **Damage to Impaired Property or Property Not Physically Injured**

        "Property damage" to "impaired property" or property                 that has not been physically injured, arising out of:

**…**

        **(2)**    A delay or failure by your o anyone acting on  your behalf to perform a contract or agreement in accordance with its terms.

            **…**

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**…**

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insured, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**…**

## SECTION IV – COMMERCIAL GENERAL LIABLIITY CONDITIONS

**...**

## 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

> **(1)** How, when and where the "occurrence" or offense took place;
>
> **(2)** The names and addresses of any injured persons and witnesses; and
>
> **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

> **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>
> **(2)** Notify us as soon as practicable.

**c.** You and any other involved insured must:

> **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> **(2)** Authorize us to obtain records and other information;
>
> **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

…

## SECTION V – DEFINITIONS

…

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

...

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

...

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

...

    **b.** You have failed to fulfill the terms of a contract or agreement.

...

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

**17.** "Property damage" means:

    **a**. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

...

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

...

**COMMERCIAL GENERAL LIABILITY**
**CL CG 04 42 11 10**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
**...**

C.    **KNOWLEDGE OF OCCURRENCE**

Subparagraph **a.** under **2. Duties In The Event Of Occurrence, Offense Claim or Suit** of **Section IV- Commercial General Liability Conditions** is deleted and replaced by the following:

**a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim only when the "occurrence" or offense is known to:
**...**

    **(4)**    An "executive officer" or the "employee" designated by you to give such notice, if you are an organization other than a partnership or a limited liability company.
    **...**

To the extent possible, notice should include:

    **(5)**    How, when and where the "occurrence" or offense took place;

    **(6)**    The names and addresses of any injured persons and witnesses; and

    **(7)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

19.    Specifically, the underlying lawsuit contains the following counts:

- Breach of Contract;

- Violation of Alabama Limited Liability Company Act;

- Violation of Alabama Security and Franchise Laws;

- Breach of the Duty of Food Faith and Fair Dealing;

- Unjust Enrichment;

- Fraudulent Transfer of Money;

- Negligent Transfer of Money;

- Negligent Misrepresentation;

- Negligent Suppression;

- Demand for Accounting;

- Conversion;

- Breach of Fiduciary Duty;

- In the closing unnumbered paragraph of the underlying complaint the underlying plaintiffs demand a Refund of the remainder of "its" contribution toward the joint business venture;

- In the closing unnumbered paragraph of the underlying complaint the underlying plaintiffs demand Mental Anguish/Emotional Distress damages.

**Exhibit B**, Underlying Complaint, ¶ 20(a-k), pp. 4-6.

20.    It is Acadia's position there is no coverage for some or all of the allegations contained in the underlying lawsuit against the SouthernPointe defendants. Without limitation and without waiving any other reason(s) that may exist for lack of coverage, the reasons that there is no coverage for the claims against the SouthernPointe defendants under Acadia's policy include:

A.    Acadia's policy covers only "bodily injury" and "property damage" caused by an "occurrence", defined by the policy as an accident.  In their underlying lawsuit, Pate and Encore, LLC state that the purpose of the suit is a refund of the remaining $600,000 the underlying plaintiffs contributed toward the business enterprise it entered into with the SouthernPointe defendants. **Exhibit B**, Underlying Complaint, ¶18, p. 4. The underlying plaintiffs clearly state that the **gravamen** of the underlying lawsuit is a failed joint business venture between the underlying parties. **Exhibit B**, Underlying Complaint, ¶ 8, p. 2. Therefore, the underlying allegations against the SouthernPointe defendants do not meet the definition of an "occurrence" as defined by the policy. *See* **Insuring Agreement**, as set out above.

**B.** All allegations of breach of contract, including the SouthernPointe defendants' alleged breach of its/their fiduciary duty to its/their business partner/s, are excluded by Acadia's policy. Breach of contract is not accidental and therefore does not meet the definition of an "occurrence" as required and defined by Acadia's policy. Further, breach of contract is a business decision solely within the control of the insured and, therefore, cannot be covered by liability insurance. *See* **Insuring Agreement**, as set out above.

**C.** The underlying plaintiffs' allegations that the SounthernPointe defendants have violated State of Alabama security and franchise laws and duties of good faith and fair dealing are based on intentional conduct not covered under Acadia's policy. Intentional conduct does not meet the definition of an "occurrence," defined by Acadia's policy as an "accident." Further, intentional conduct is excluded by the SouthernPointe defendants' policy. *See* **Insuring Agreement**, as set out above.

**D.** The underlying plaintiffs' allegation of conversion is based on intentional conduct not covered under Acadia's policy. Intentional conduct does not meet the definition of an "occurrence," generally defined by Acadia's policy as an "accident." Further, intentional

conduct is excluded by the policy. *See* **Insuring Agreement**, as set out above.

E.      The underlying lawsuit also sets forth allegations of negligent transfer of money, negligent misrepresentation, and negligent supervision. The deliberate acts or decisions made by one or more parties to a business venture, even if said party acted or made decisions based on a mistake of fact and/or error in judgment, do not meet the definition of an "occurrence" as defined by the policy. *See* **Insuring Agreement**, as set out above. Further, the underlying plaintiffs' negligence claims "merely [dangle] as a cause of action unrelated to any asserted facts…. Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insured has a duty to defend [and/or indemnify] its insured in the action." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1012 (2005).

F.      The underlying allegation of mental anguish (and/or emotional distress) was not caused by an "occurrence" as defined by the policy and Alabama case law. *See* **Insuring Agreement**, as set out above.

G.      The damages underlying plaintiffs allege they have suffered as a result of the SouthernPointe defendants actions may not have

occurred during Acadia's policy period. *See* **Insuring Agreement**, as set out above.

**H.** The SouthernPointe defendants may have failed to provide proper notice to Acadia. See **Insuring Agreement**, as set out above.

**I.** The underlying plaintiffs' alleged monetary losses and/or the loss of investment income do not meet the definition of "bodily injury" as defined by the insured's policy. *See* **Insuring Agreement**, as set out above.

**J.** The underlying plaintiffs' alleged monetary losses and/or the loss of investment income do not meet the definition of "property damage" as defined by the insured's policy. *See* **Insuring Agreement**, as set out above.

**K.** Acadia reserves the right to supplement and provide to the Court additional coverage issues as warranted.

21. Acadia is providing a defense to the SouthernPointe defendants under a reservation of rights.

22. A genuine controversy exists as to whether Acadia's policy provides coverage to the SouthernPointe defendants.

23.    A justiciable controversy exists between the parties, which requires a court to declare the rights, remedies, obligations and liabilities of the parties under Acadia's policy.

WHEREFORE, Acadia requests this Honorable Court grant the following relief:

A.    Declare whether Acadia has a duty to defend the SouthernPointe defendants from the allegations of the underlying lawsuit;

B.    Declare whether Acadia has a duty to indemnify the SouthernPointe defendants from the allegations of the underlying suit;

C.    Grant Acadia such other, further or different relief to which it may be entitled.

Respectfully submitted,

s/David A. Bright
Daniel R. Klasing [asb-2630-g66d]
David A. Bright [asb-0758-g69d]
Attorneys for Plaintiff,
Acadia Insurance Company
OF COUNSEL:
KLASING, WILLIAMSON,
BURKE & BRIGHT, P.C.
1601 Providence Park
Birmingham, Alabama 35242
Tele: 205.980.4733
Fax 205.980.4737
Dan@kwpc-law.com
David@kwpc-law.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**

LUTHER S. PATE, IV
2201 Jack Warner Pkwy Ste 2
Tuscaloosa, AL 35401

ENCORE TUSCALOOSA, LLC
c/o Cameron Parsons
2201 Jack Warner Parkway, Ste. 2
Tuscaloosa, Alabama  35401

SOUTHERNPOINTE GROUP, INC.
c/o Foxhill Companies, Inc.
Robert L. Donlon
960 Dauphin Street
Mobile, Alabama  36604

ROBERT DONLON
253 State Street
Mobile, Alabama  36603

BEVERLY DONLON
253 State Street
Mobile, Alabama  36603