# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **ACADIA INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:17-cv-01368-AKK** |
| | ) | |
| **SOUTHERNPOINTE GROUP,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Acadia Insurance Company brings this declaratory judgment action to determine its rights under a Commercial Liability Policy it issued to SouthernPointe Group, Inc. (SouthernPointe)[1] with respect to a lawsuit recently filed against SouthernPointe in state court. SouthernPointe has filed a Motion to Dismiss, doc. 12, contending that, as a matter of law, Acadia is obligated to provide coverage for the claims asserted in the underlying litigation.[2] That motion is now fully briefed, docs. 15; 16, and ripe for decision. After carefully reviewing

---

[1] Two of SouthernPointe's corporate officers, Robert and Beverly Donlon, are also covered under the Policy. Although they are individually named as defendants in this suit, the court will treat SouthernPointe as the sole defendant for ease of reference.

[2] SouthernPointe originally moved to dismiss Acadia's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). Doc. 12 at 1. However, because Rule 12(b)(1) applies to motions to dismiss for lack of subject-matter jurisdiction rather than for failure to state a claim, SouthernPointe moved to amend its motion to seek dismissal under Rule 12(b)(6). Doc. 17. That motion is **GRANTED**.

the complaint and the parties' briefs, SouthernPointe's motion is due to be denied in part and granted in part.

## I.  <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to comply with Rule 8(a)(2) or does not otherwise state a claim upon which relief can be granted. When evaluating a motion under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556

2

U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 (emphasizing that "[f]actual allegations [included in the complaint] must be enough to raise a right to relief above the speculative level"). Ultimately, the line between possibility and plausibility is a thin one, and making this determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In the context of an action seeking declaratory relief, the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Thus, as the Supreme Court has explained, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Significantly, "the requirements of [a] case or controversy are met

where payment of a claim is demanded as of right . . . but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid or to challenge the legality of the claim." *Altvater v. Freeman*, 319 U.S. 359, 365 (1943); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007) (concluding that there was no requirement that the plaintiff terminate a license agreement before seeking a declaratory judgment that the patent underlying the agreement was invalid, unenforceable or not infringed).

## II. <u>FACTS</u>

Acadia issued a Commercial Liability Policy (the Policy),[3] naming SouthernPointe as an insured, covering a year-long period beginning on March 10, 2014. Docs. 1 at 2; 1-1 at 5. Among other things, the Policy provides insurance coverage for "bodily injury and property damage . . . caused by an occurrence." Doc. 1-1 at 11. The Policy defines property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property." *Id.* at 25. An "occurrence," for purposes of the Policy, means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 24. The Policy, however, fails to include a definition for the term "accident."

---

[3] This action specifically concerns the Commercial General Liability Coverage Part of that policy. Doc. 1 at 2.

The Policy also contains specific exclusions precluding coverage for certain types of property damage. These exclusions include damages that are "expected or intended from the standpoint of the insured," damages to "[p]ersonal property in the care, custody or control of the insured," damages based on the insured's assumption of liability in a contract or agreement, and non-physical damages arising out of the insured's "delay or failure . . . to perform a contract or agreement in accordance with its terms." *Id.* at 12, 14–15.

During the coverage period, SouthernPoint entered into an agreement with Luther S. Pate, IV and Encore Tuscaloosa, LLC (collectively Encore) to develop Wintzell's Oyster House restaurant locations in and around Jefferson County, Alabama. Docs. 1 at 3; 1-4 at 2–4. Encore contributed significant capital to develop these properties, but the business relationship between the parties quickly soured. Doc. 1-4 at 3–5. In February 2016, Encore sued SouthernPointe in the Circuit Court of Jefferson County, Alabama asserting, among other things, claims for breach of contract, fraud, and breach of fiduciary duty all primarily arising out of SouthernPointe's alleged misuse of funds that Encore contributed toward the development of the restaurant properties. *Id.* at 1, 3–7. Acadia is currently defending SouthernPointe against these allegations in state court, but it has reserved its right to ultimately deny coverage under the Policy. Doc. 1 at 16. Consistent with this reservation of right, Acadia now seeks a declaration from this

court that it has no obligations under the Policy related to the underlying lawsuit. SouthernPointe has now moved to dismiss the action under Rule 12(b)(6) for failure to state a claim. Doc. 12.

## III.  **DISCUSSION**

SouthernPointe's motion focuses on the threshold question of whether the business dispute that is the subject of the underlying state court lawsuit qualifies as an "occurrence" under the Policy. The Policy broadly defines an "occurrence" as an "accident," but provides no further interpretative guidance. Doc. 1-1 at 24. According to SouthernPointe, Alabama law provides that, in the absence of contrary contractual language, the question of whether an accident has occurred in the insurance context is exclusively determined via reference to the subjective intent of the insured. SouthernPointe contends that it did not anticipate its business relationship with Encore to end in failure and that Encore's complaint in state court is silent with respect to SouthernPointe's subjective intentions. Therefore, SouthernPointe avers that the business dispute at the heart of the underlying lawsuit qualifies as an "occurrence" under the Policy and that Acadia is obliged to defend and indemnify it as a matter of law.

Under Alabama law, which the parties agree governs Acadia's obligations under the Policy, an insurer's twin duties to defend and indemnify its insured are distinct, and "must be analyzed separately." *United States Fid. & Guar. Co. v.*

*Armstrong*, 479 So. 2d 1164, 1167 (Ala. 1985). An insurer's duty to defend "is more extensive than its duty to [indemnify]," and is primarily determined by the allegations contained in the underlying complaint. *Id.* at 1168. Indeed, the duty to defend exists only if "the original complaint alleges a state of facts within the coverage of the policy." *Id.* However, "the court is not limited to the bare allegations of the complaint in the action against [the] insured but may also look to facts which may be proved by admissible evidence." *Pac. Indem. Co. v. Run-A-Ford Co.*, 161 So. 2d 789, 795 (Ala. 1964). "[I]f a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy." *Blackburn v. Fid. & Deposit Co. of Md.*, 667 So. 2d 661, 670 (Ala. 1995).[4]

---

[4] On the other hand, whether a duty to indemnify exists depends "on the facts adduced at the trial of the action [against the insured]." *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1013 (Ala. 2005). Indeed, "[t]he duty to indemnify does not rise out of the existence of a duty to defend." *Ala. Gas Corp. v. Travelers Cas. & Sur. Co.*, 990 F. Supp. 2d 1163, 1167 (N.D. Ala. 2013). Thus, "a determination of the duty to indemnify cannot be made at a preliminary stage in the [underlying] proceedings, when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy at issue." *Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1565 (M.D. Ala. 1996); *see also Emp'rs Mut. Ins. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp. 2d 1205, 1211–12 (S.D. Ala. 2005) (explaining that "[i]t is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the [insurer's] indemnity obligations absent a determination of the insureds' liability" in the underlying suit). Here, there has been no determination of the liability of the insured in the underlying proceeding, and deciding the claim would force this court to engage in unfounded speculation. Moreover, withholding adjudication until a determination of the insured's liability is reached does not harm the parties who remain free to litigate the issue at the appropriate time. *See Ex parte Stonebrook Dev., L.L.C.*, 854 So. 2d 584, 591 (Ala. 2003) (noting that under Alabama law the limitations period for an indemnification action begins to run only after the liability at issue becomes fixed). Therefore, Acadia's request for a declaration that it has no duty to indemnify SouthernPointe is insufficiently ripe for adjudication, and, as to the duty to indemnify claim, SouthernPointe's

It is undisputed that the Policy only provides coverage for property damage caused by an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Doc. 1-1 at 24. While the Policy fails to define the term "accident," Alabama law has previously defined the word in a substantively identical context as "'[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated.'" *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005) (quoting *Accident*, BLACK'S LAW DICTIONARY 15 (7th ed. 1999)). In other words, an accident is "something unforeseen, unexpected, or unusual." *U.S. Fid. & Guar. Co. v. Bonitz Insulation Co. of Ala.*, 424 So. 2d 569, 572 (Ala. 1982). "'A result, though unexpected, is not an accident; the means or cause must be accidental.'" *Emp'rs Mut. Cas. Co. v. Smith Constr. & Dev., LLC*, 949 F. Supp. 2d 1159, 1171 (N.D. Ala. 2013) (quoting *Am. Safety Indem. Co. v. T.H. Taylor, Inc*., No. 2:10CV48-MHT, 2011 WL 1188433 at *4 (M.D. Ala. Mar. 29, 2011)).

Whether a particular result is unexpected, however, turns on the subjective intent of the insured. *See, e.g.*, *Universal Underwriters Ins. Co. v. Stokes*

motion to dismiss is **GRANTED** and that claim is dismissed without prejudice. *See Toole*, 947 F. Supp. at 1566–67; *Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960) (affirming district court's decision to dismiss an insurer's request for a declaration that it had no duty to indemnify the insured before the insured's liability was fixed and declaring the district court "was well within its considered judicial discretion to decline to express legal opinions on academic theoreticals which might never come to pass").

*Chevrolet, Inc.*, 990 F.2d 598, 603 (11th Cir. 1993) (explaining that "Alabama courts have consistently construed . . . [substantively identical language in commercial insurance policies] as precluding coverage only where the insured subjectively intended or expected its action to cause injury"); *Ala. Plating Co. v. U.S. Fid. & Guar. Co.*, 690 So. 2d 331, 333 (Ala. 1996) (explaining that the "the focus of the definition of 'occurrence' is whether the insured . . . expected or intended . . . [to] cause . . . property damage . . . [measured via] a subjective test"); *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Dyer*, 454 So. 2d 921, 925 (Ala. 1984) (holding that "a purely subjective standard governs the determination of whether the insured . . . either expected or intended to inflict . . . injury"). Alabama law further provides that an injury is intended "if the insured possessed the specific intent to cause . . . injury," and an injury is expected "if the insured subjectively possessed a high degree of certainty that . . . injury . . . would result from . . . [an] act." *Dyer*, 454 So. 2d at 925.[5]

SouthernPointe contends that the underlying complaint does not include any allegations bearing on its intent to damage Encore's property, and that it expected its business dealings with Encore to end in success. Instead, according to

_____

[5] The court notes that "Alabama courts have indicated some willingness to presume that an intentional tortfeasor intends or expects injury by its actions." *Stokes Chevrolet*, 990 F.2d at 603; *see also Hartford Cas.*, 928 So. 2d at 1008, 1011–13 (interpreting identical contract language and finding that although the insured "may have made a mistake of fact and/or an error in judgment . . . it at all times acted in a deliberate and purposeful manner" and that this did not constitute an "occurrence" for purposes of insurance coverage) (quotation omitted).

SouthernPointe, Encore backed out of the parties' agreement unexpectedly, creating an unforeseen circumstance resulting in property damage and thereby meeting the Policy's definition of an "occurrence." Therefore, SouthernPointe argues, the underlying lawsuit falls within the general coverage provision of the Policy and the court should dismiss this lawsuit as a matter of law. The court is not convinced.

The fact that the underlying complaint does not contain factual allegations directly related to SouthernPointe's subjective intent to damage Encore's property does not end the inquiry. Instead, the court may look beyond the allegations in the underlying complaint to outside facts bearing on those allegations "which may be proved by admissible evidence." *Run-A-Ford, Co.*, 161 So. 2d at 795. Moreover, while there is no specific evidence of intent before the court at this stage of the proceeding, Acadia's complaint alleges, in part, that the underlying suit contains fraud and breach of contract claims, as well as claims arising from the alleged violation of various Alabama commercial laws. Doc. 1-4 at 1, 5–7. These claims all plausibly require purposeful conduct on the part of SouthernPointe, and indeed the complaint alleges that SouthernPointe took specific actions solely for its own benefit while ignoring its obligations toward Encore. *Id.* at 3–7. Based on these allegations, the court cannot find, on a motion to dismiss, that a lawsuit arising from deliberate business decisions purportedly disregarding contractual and legal

obligations qualifies as accidental conduct that warrants a finding at this juncture that Acadia must provide coverage to SouthernPointe. *See Hartford Cas.*, 928 So. 2d at 1013 (explaining that "a series of purposes and deliberate acts [preclude the insured from showing] an unexpected, unintended, or unforeseen result from its course of action").

The court acknowledges that some of the claims in the underlying complaint sound in negligence, or otherwise do not necessarily require intentional conduct on the part of SouthernPointe to create liability. Doc. 1-4 at 6–7; *See Bonitz*, 424 So. 2d at 571 (explaining that "the term 'accident' does not necessarily exclude human fault called negligence"). But, even granting that this is so, no adequate ground to dismiss Acadia's request for declaratory relief exists as to even those claims. In fact, Acadia's complaint asserts several alternative grounds for finding that the Policy does not require it to defend SouthernPointe in the underlying proceedings, and SouthernPointe has not provided any legal basis for rejecting those grounds at this stage. Specifically, Acadia contends that the term "property damage," which the policy defines as "[p]hysical injury to tangible property, including all resulting loss of use of that property," doc. 1-1 at 25, does not encompass the economic

losses asserted as the primary basis for the underlying plaintiffs' claims in state court.[6]

A review of Encore's lawsuit shows that Encore's numerous claims all fundamentally arise out of a failed business relationship with SouthernPointe.[7] Encore alleges that although it contributed the agreed upon amount of capital to the project, SouthernPointe "squandered and/or misappropriated funds" and then "repaid only a fraction of the money that [Encore had] contributed." Doc. 1-4 at 4–5. Moreover, Encore's claims based on these allegations uniformly involve purely economic injuries rather than damage to tangible property that is "capable of being handled [or] touched." *Martin*, 662 So. 2d at 248. In short, Encore seeks to receive the economic benefits it anticipated accruing through its relationship with SouthernPointe and to recover its lost investment in that relationship. These

---

[6] Indeed, in the insurance context, Alabama courts have opined that "[tangible] property . . . is property that is capable of being handled, touched, or physically possessed," *Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 248 (Ala. 1995), and that "strictly economic losses like lost profits, loss of an anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to 'tangible' property," *id.* at 249. SouthernPointe's attempts to distinguish *Martin* are unavailing. The commercial insurance policy at issue in *Martin* contains identical language to the policy at issue in this case with respect to the definition of property damage. The Alabama Supreme Court interpreted that language as foreclosing coverage for economic losses because such losses do not result from "damage to 'tangible property.'" *Martin*, 662 So. 2d at 249. Just as in *Martin*, the allegations here involve the loss of invested capital and future benefits flowing from that investment, property that is not subject to "physical damage or destruction." *Id.* Simply because this decision was rendered in response to a certified question does not impair its precedential value and SouthernPointe cites no case law to the contrary.

[7] The court may refer to the underlying lawsuit without converting SouthernPointe's motion to dismiss into a motion for summary judgment because "[e]xhibits attached to the complaint are treated as part of the complaint for Rule 12(b)(6) purposes." *Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv.*, 493 F. App'x 994, 995 (11th Cir. 2012).

allegations are sufficient, at this stage, to plausibly state a claim that the damages at issue in this case fall outside of the "physical injury to tangible property" insured by the Policy. Doc. 1-1 at 25.

## IV. CONCLUSION AND ORDER

Based on the allegations in the underlying lawsuit, Acadia's complaint asserts at least one alternative ground for finding that the policy does not require it to defend SouthernPointe in the underlying proceedings, and SouthernPointe has not provided any basis for rejecting that ground at this stage. Therefore, because the language of the policy plausibly supports Acadia's position that it is not required to defend SouthernPointe against the underlying plaintiff's lawsuit— which is all Acadia's complaint needs to plead, as to the duty to defend claim, SouthernPointe's motion to dismiss, doc. 12, is **DENIED**.

**DONE** the 29th day of November, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE