# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ACADIA INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:17-cv-01368-AKK** |
| **SOUTHERNPOINTE GROUP,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Acadia Insurance Company originally filed this lawsuit to seek a declaration of its rights under a commercial insurance policy issued to SouthernPointe Group, Inc. (SouthernPointe) with respect to a lawsuit filed against SouthernPointe in state court by Luther S. Pate, IV and Encore Tuscaloosa, LLC (collectively Encore). Acadia names both SouthernPointe and Encore as defendants. SouthernPointe has since filed a motion to dismiss, doc. 12, which this court recently denied. Doc. 32. SouthernPointe has also filed an answer to Acadia's complaint which, among other things, asserts a crossclaim against Encore. *See* Doc. 25 at 22–31. Encore has moved to dismiss the crossclaim on jurisdictional grounds, doc. 33, and that motion is ripe for a ruling. After carefully reviewing SouthernPointe's answer, the

parties' briefs, docs. 33; 26; and 39, and established federal law governing crossclaims, the court has determined that Encore's motion is due to be granted.[1]

## I.    STANDARD OF REVIEW

A 12(b)(1) challenge for lack of subject matter jurisdiction may take the form of a facial or factual attack on the complaint. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack "'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [her] complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). On the other hand, a factual attack challenges "'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *Id.* (quoting *Lawrence*, 919 F.2d at 1529. In such an instance, the court may hear conflicting evidence and decide the factual issues bearing on jurisdiction. *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). Indeed, "when a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) . . . 'no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating

---

[1] The court **DENIES** SouthernPointe's request for Leave to File a Surreply, doc. 40. The parties' briefs have adequately addressed the relevant issues, and the proper treatment of crossclaims is not the sort of novel or exceptionally difficult question that requires additional briefing.

for itself the merits of the jurisdictional issue.'" *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Lawrence*, 919 F.2d at 1529). Here, Encore's motion relies only on the pleadings and the court accordingly construes it as a facial attack on subject matter jurisdiction.[2]

## II.    FACTS

Acadia issued a corporate general liability insurance policy to SouthernPointe in early 2014. Docs. 1 at 2; 1-1 at 5. During the coverage period, SouthernPointe entered into an agreement with Encore to finance and develop new restaurant locations for Wintzell's Oyster House restaurants in and around Jefferson County, Alabama. Docs. 1 at 3; 1-4 at 3. Encore contributed significant capital to develop these properties, but the business relationship between the parties quickly soured. Doc. 1-4 at 3–5. Encore sued SouthernPointe in the Circuit Court of Jefferson County, Alabama asserting a litany of claims primarily arising out of SouthernPointe's alleged misuse of funds that Encore contributed toward the development of the restaurant properties. *Id.* at 1, 3–7. Significant here,

---

[2] The court recognizes that simply because Rule 13(g) of the Federal Rules of Civil Procedure allows for the filing of a crossclaim does not resolve the question of whether the court may appropriately exercise jurisdiction over that claim. *See Amco Constr. Co. v. Miss. State Bldg. Comm'n*, 602 F.2d 730, 732–33 (5th Cir. 1979); *see also*, 6 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1433 (3d ed. 2017) (explaining that typically federal courts treat crossclaims "as part of the court's ancillary jurisdiction"). However, "a proper cross claim satisfies the requirements of ancillary jurisdiction." *Amco Constr.* 602 F.2d at 732. So, for all practical purposes, the court's analysis of the propriety of asserting a particular crossclaim pursuant to Rule 13(g) dovetails with the jurisdictional analysis the court must conduct to determine whether the exertion of jurisdiction over a nonfederal crossclaim is proper. *Id.* at 733. Accordingly, the court considers this issue properly raised via Rule 12(b)(1).

SouthernPointe did not assert any counterclaims against Encore in the underlying lawsuit. Docs. 33 at 5; 33-2. Acadia is currently defending SouthernPointe against these allegations in state court under a reservation of rights. Doc. 1 at 16. Consistent with that reservation, Acadia filed this lawsuit to determine the extent of its obligations under the insurance policy with respect to the state court proceeding. *Id.* at 16–17.[3] In its answer to Acadia's complaint, SouthernPointe asserted several crossclaims for state law fraud against Encore pursuant to Rule 13(g) of the Federal Rules of Civil Procedure. Doc. 25 at 22, 25, 29. Encore has now moved to dismiss those crossclaims on jurisdictional grounds. Doc. 33 at 2.

## III. DISCUSSION[4]

The case before the court is straightforward. Acadia has requested a determination of whether it is obligated to provide coverage for the legal dispute that has arisen between Acadia's insured, SouthernPointe, and Encore. Answering this question does not require this court to resolve, or even to inquire into, the facts underlying the parties' substantive, legal dispute. In that respect, to the extent that SouthernPointe has a valid claim to assert against Encore, it should do so in the

_____

[3] While this lawsuit originally sought declaratory relief with respect to Acadia's duty to defend and indemnify its insured under the insurance policy, the court has subsequently dismissed Acadia's request for a declaration that it has no duty to indemnify. Doc. 32 at 7 n.4.

[4] As an initial matter, the court may judicially notice documents outside the pleadings without converting a Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 56(a). *See United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). This category of judicially noticed documents explicitly includes "publicly filed documents, such as those in state court litigation." *Id.* at 811 n.4.

pending state court case rather than via a crossclaim brought pursuant to Rule 13(g) in this ancillary declaratory judgment action.

Relevant here, Rule 13(g) allows a party to assert a crossclaim against a coparty "if the claim arises out of the transaction or occurrence that is the subject of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action."  Although the Eleventh Circuit does not appear to have directly addressed the appropriate standard for applying the same transaction or occurrence test under Rule 13(g), the circuit has explained, in the counterclaim context, that a claim arises from the same transaction or occurrence as the original action if it "bears a logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction."  *Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 714 (5th Cir. 1970).[5]  A claim satisfies this logical relationship test if "(1) . . . the same aggregate of operative facts serves as the basis of both claims; or (2) . . . the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant."  *Id.* at 715.

---

[5] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

Here, the various claims and counterclaims at issue relate only to the rights and obligations of the insurer and the insured with respect to Encore's underlying lawsuit in state court. *See* Docs. 1 at 17; 21 at 4–5; 25 at 19–20. Encore is a non-party to the insurance policy primarily at issue here and its substantive legal rights remain unaffected by any legal determination the court reaches regarding the scope of the insurer's duty to defend. Consequently, to rule on Encore's motion to dismiss SouthernPointe's crossclaims, this court need only address whether the operative core of facts underlying the declaratory judgment action presently before the court also serve as a basis for the crossclaims asserted against Encore. Upon review, the court concludes that they do not.[6]

"An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured." *Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993). Thus, the duty to defend exists only if "the original complaint alleges a state of facts within the coverage of the policy." *U. S. Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985). Of course, if information relevant to the coverage provisions is not included in the underlying complaint, the court "may also look to facts which may be proved by admissible

---

[6] The court notes that while multiple counterclaims exist in this action, they all seek a declaration with respect to the insurer's duty to defend and indemnify its insured. Docs. 21 at 4–5; 25 at 19–20. Because these claims are essentially identical to the original basis for the action, the court's analysis applies equally to SouthernPointe's argument that its crossclaims arise out of the same transaction or occurrence as a counterclaim for Rule 13(g) purposes.

evidence." *Pac. Indem. Co. v. Run-A-Ford Co.*, 161 So. 2d 789, 795 (Ala. 1964). In other words, Alabama courts have taken the position that when a complaint alleges an injury "which is within the policy coverage but can be shown to be within the coverage only when facts, which do exist but are not alleged in the complaint, are taken into consideration," the court may consider those outside facts. *Id.*

As mentioned above, Encore is a non-party to the insurance contract, doc. 1-1 at 5, and Acadia does not assert that its duty to defend or indemnify SouthernPointe is dependent on Encore's conduct. The allegedly tortious behavior that forms the basis for SouthernPointe's crossclaims against Encore simply have no bearing on the scope of Acadia's duty to defend its insured against Encore's substantive allegations in state court. Indeed, the operative facts involved in adjudicating SouthernPointe's crossclaims against Encore are entirely distinct from those involved in adjudicating Acadia's claims for declaratory relief, which primarily turn on the language of the insurance contract and whether the underlying complaint contains sufficient facts to bring the complaint's allegations under the aegis of the insurance policy. Factual determinations related specifically to the underlying dispute between SouthernPointe and Encore are expressly not required for such a finding.

Moreover, the two primary defenses Acadia raises to its duty to defend SouthernPointe: (1) that the damages claimed by Encore do not stem from "property damage" or "bodily injury" as is required for coverage; and (2) that Encore's claims against SouthernPointe stem from intentional rather than accidental conduct, doc. 1 at 13–16,[7] do not implicate the fraud crossclaims asserted by SouthernPointe. As to the first defense, the question of whether the damages claimed by Encore are insurable in the first instance clearly does not require the court to resolve questions surrounding Encore's underlying conduct. Instead, the court is tasked only with determining whether the damages Encore claims in its underlying complaint fall within the applicable language of the insurance policy. The closest potential connection to Encore's crossclaims flows from Acadia's second defense, i.e. that the incidents alleged in Encore's underlying suit stem from SouthernPointe's intentional conduct and are thus excluded from coverage based on the policy's terms. However, under Alabama law, the question of whether an event is accidental and thus covered by a policy like the one involved here turns solely on the subjective intent of the insured. *See Ala. Plating Co. v. U.S. Fid. & Guar. Co.*, 690 So. 2d 331, 333 (Ala. 1996) (explaining that the "the focus of the definition of 'occurrence' is whether the

_____

[7] Acadia also asserts that the damages allegedly caused by SouthernPointe fell outside of the policy period and that SouthernPointe failed to adhere to technical reporting requirements contained in the insurance policy. Doc. 1 at 15–16. Clearly, neither SouthernPointe's compliance with the technical reporting requirements of the policy or the timing of the alleged events underlying this lawsuit implicate SouthernPointe's fraud claims against Encore.

insured . . . expected or intended . . . [to] cause . . . property damage . . . [measured via] a subjective test").  Put plainly, Encore's alleged behavior is not part of the inquiry the court must undertake to rule on Acadia's claims.

On the other hand, adjudicating SouthernPointe's crossclaims against Encore will require the court to replicate the ongoing proceedings in state court by conducting a factual inquiry into the relationship between the two parties.  There is no rational justification for conducting this sort of duplicative proceeding when Encore's purportedly fraudulent behavior is not pertinent to "the main claim over which the court has an independent basis of federal jurisdiction," *Revere Copper & Brass*, 426 F.2d at 714—whether Encore's underlying complaint alleges a set of facts capable of triggering Acadia's duty to defend its insured.  In other words, SouthernPointe's crossclaims seek to adjudicate the merits of its underlying dispute with Encore, while Acadia's request for declaratory relief seeks only to determine whether Encore's lawsuit alleges facts falling within the insurance policy.  These inquiries lack the requisite logical connection to justify an assertion of jurisdiction over the crossclaims pursuant to Rule 13(g).

SouthernPointe resists this conclusion by arguing, essentially, that Encore's counterclaim against Acadia, requesting a declaratory judgment that Acadia owed a duty to defend and indemnify SouthernPointe, doc. 21 at 4–5, was intended to ensure recovery in the event Encore prevailed in state court.  Therefore,

9

SouthernPointe alleges its crossclaims arise out of Encore's counterclaim because the crossclaims function to deny substantive liability to Encore defeating the recovery Encore's counterclaim seeks.  But this argument does not establish the requisite logical relationship needed for a crossclaim to arise out of the same transaction or occurrence as a particular counterclaim.  Certainly the claims at issue here have some effect on each other in a practical sense, but, as explained above, the legal basis for each claim remains wholly distinct and the resolution of each claim relies on a separate core of operative facts.  Thus, SouthernPointe's argument seeking to link its crossclaims against Encore with Encore's counterclaim against Acadia are inapplicable to the court's analysis under Rule 13(g).

## IV.    CONCLUSION AND ORDER

In essence, SouthernPointe is seeking to litigate counterclaims it failed to raise in the state action Encore filed against it as crossclaims in a derivative action in federal court.  This attempt fails under Rule 13(g) because the crossclaims bear no logical relationship to the various requests for a declaratory judgment otherwise at issue in this case.  To rule on Acadia's request for declaratory relief, the court need only determine whether the state court lawsuit sufficiently alleges a set of facts covered by SouthernPointe's insurance policy.   This inquiry is indifferent to Encore's conduct and turns only on the actions and subjective intent of the insured,

SouthernPointe, and the allegations contained in the underlying complaint. To resolve SouthernPointe's crossclaims, however, this court must conduct a factual inquiry into the relationship between SouthernPointe and Encore, an entirely separate chain of analysis. The court declines to undertake this exercise and instead follows the majority view which endorses the fact specific approach followed here, e.g., that in this context Rule 13(g) only encompasses crossclaims that require the court to decide issues factually intertwined with the request for declaratory relief serving as the original basis for federal litigation. *See* 6 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1432 (3d ed. 2017); 10B Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2768 (4th ed. 2017).[8] To the extent SouthernPointe wishes to assert claims against Encore, the underlying lawsuit in state court is the proper vehicle for those

---

[8] *See also Podiatry Ins. Co. of Am. v. Falcone*, No. 3:10-1106, 2011 WL 1750708, at *3–*4 (S.D.W. Va. Feb. 25, 2011) (explaining that while the underlying tort action does have some logical overlap with an insurer's federal action seeking declaratory relief, given that no underlying merits determination is necessary to resolve the insurer's duty to defend, the relationship between the actions is not "significant enough to yield the conclusion that the complaint and the cross-claim arise out of the same transaction or occurrence"); *Mt. Vernon Fire Ins. Co. v. A. S. Constr., Inc.*, No. 05 cv 3190, 2007 WL 2275242, at *3 (E.D.N.Y. Aug. 7, 2007) (explaining "[w]here the injured party's claim of negligence involves a factual investigation unrelated to the insurance dispute in the main action, the asserted cross-claim has been held to arise out of a distinct transaction or occurrence and thus lies beyond the scope of Rule 13(g)"); *St. Paul Fire & Marine Ins. Co. v. Mannie*, 91 F.R.D. 219, 221 (D.N.D. 1981) (holding "[t]he terms of the policy and [its] application to a given set of facts is a question entirely separate from the question of [the insured's] alleged negligence"); *but see Plains Ins. Co. v. Sandoval*, 35 F.R.D. 293, 296 (D. Colo. 1964) (finding that when the basis for an insurer's attempt to disclaim its duty to defend its insured overlaps with an asserted crossclaim "it is consistent with the interests of justice and the spirit of the Federal Rules to adjudicate [both claims] in one action").

claims.  Therefore, the court **GRANTS** Encore's motion, doc. 33, and **DISMISSES** SouthernPointe's crossclaims against Encore.

    **DONE** the 24th day of January, 2018.

                                        **ABDUL K. KALLON**
                                UNITED STATES DISTRICT JUDGE